IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| MONROE R. PARKER, JR., | ) | Civil Action No.  4:07-00287-MBS-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| SOUTHERN HEALTH | ) | |
| PARTNERS; PHILLIP A. FOOT; C.E. | ) | |
| ALLEN; P. J. TANNER; SGT. R. | ) | |
| EDWARDS, JR., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.  PROCEDURAL BACKGROUND

The plaintiff, Monroe R. Parker, Jr., filed this action under 42 U.S.C. § 1983[1] on January 30, 2007, alleging violations of his constitutional rights. During the time of the matters alleged in his complaint, plaintiff was housed at the Beaufort County Detention Center (BCDC) as a pretrial detainee. On May 11, 2007, defendant Southern Health Partners, Inc. filed a motion for summary judgment along with a memorandum in support of that motion.(document #27).  Because plaintiff is proceeding pro se, he was advised on or about May 16, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendant's motion for summary judgment with additional evidence or counter affidavits could result in the dismissal of his complaint.  The plaintiff filed a response on June 18, 2007, (document #43) and submitted additional attachments on July 5, 2007 (document#50).

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

On June 13, 2007, defendants Foot, Allen, Tanner, and Edwards filed a motion for summary judgment along with a memorandum and affidavits in support of said motion. Because plaintiff is proceeding pro se, he was advised on or about June 14, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in the dismissal of his complaint. The plaintiff filed a response on July 30, 2007, (document # 62) and submitted several attachments.

## II. DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges indifference to his medical needs while a pretrial detainee at the Beaufort County Detention Center ("BCDC"). Plaintiff asserts that defendants refused him specialized care and medical care from the Veteran's Administration Medical Center. Plaintiff alleges that Dr. Bush examined plaintiff's prostate gland on December 2, 2006, and found it to be enlarged and infected. Further, plaintiff alleges the medical staff denied him medical care relative to an injury to his Achilles tendon and damage to his left thumb. Plaintiff alleges that Philip A. Foot denied him medical care because he is indigent and cannot pay for outside medical care, denied him specialized medical care at the Veterans Administration Hospital in Charleston, and after seeing the dentist provided by the BCDC, Foot denied him transportation to seek treatment by an outside dentist. Plaintiff alleges Foot and SHP conspired to deny him medical care and Foot failed to provide medical care for his Achilles tendon, thumb and prostate. Additionally, plaintiff asserts that Foot directed Counselor Barnes to stop making legal copies for the plaintiff.

## B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## C.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment.  Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).  The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual."  Bell v. Wolfish, 441 U.S. 520 (1979).  Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime.  Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials.  If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld.  Bell, 441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam).  *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.  Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam).

However, plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

### D. MEDICAL INDIFFERENCE

As previously stated, plaintiff alleges that while a pretrial detainee at BCDC he was denied outside medical care, denied specialized treatment at the Veterans Administration Hospital and denied medical care because he was indigent.

**DEFENDANT SHP**

Defendant SHP argues that the medical record establishes that from a factual standpoint, the medical staff at BCDC did not exhibit medical indifference. Defendant SHP asserts that in plaintiff's own complaint he stated that he was seen numerous times by a member of the medical staff, either on the same day or the following day. For example, SHP argues that plaintiff complained of prostate problems and lower back pain, ulcers, circulation problems and a ruptured disc on November 15, 2006. On the very next day, SHP asserts plaintiff was seen by an LPN and given medication and put on a list to see the physician. On the same day he complained of pain in his head and lightheadedness, plaintiff was seen the very next day by the LPN and diagnosed asymptomatic but would be monitored from then on. Because of continued complaints of prostate pain and difficulty

5

in urination, he was seen on December 2, 2006, by Dr. Bush who performed a rectal examination and found a slightly enlarged prostate with no nodules and a PSA test showed results as normal at .71. Further, SHP asserts that a urinalysis was done by the LPN and other testing was ordered. SHP contends that within a short period of time, two additional tests were performed indicating no red cells or bacteria. However, because of continued complaints, Dr. Bush volunteered that he would set plaintiff up an appointment with his personal urologist but plaintiff would have to bear the costs. Plaintiff declined.

With regard to plaintiff's allegations of problems with his Achilles tendon, SHP asserts no member of the medical staff ever made such a diagnosis and it was noted plaintiff walked with a normal gait to and from the medical unit. Hot soaks and Motrin were ordered as well as anti-inflammatory medicine. However, examinations revealed no evidence of any injury.

As to plaintiff's allegations of problems with his left thumb, SHP asserts it was x-rayed, there was no limitations in the range of motion and pain medication was ordered. Defendant SHP asserts there was no deliberate indifference to plaintiffs medical welfare.

**DEFENDANTS FOOT, ALLEN, EDWARDS, TANNER, KUBIC**

Defendants Foot, Allen, Edwards, Tanner and Kubic (hereinafter "defendants") filed a motion for summary judgment asserting that plaintiff received treatment for each of his alleged injuries and conditions which he has admitted in his complaint. Dr. Bush, the treating physician, submitted his affidavit stating that plaintiff did not need further treatment. Defendants assert that defendant Foot is allowed to rely on the expertise of prison doctors in treating medical conditions and is not deliberately indifferent in failing to intervene in treatment. Based on the medical records

and affidavits presented, defendants assert plaintiff received medical treatment for each and every complaint.

As to plaintiff's allegations that he was denied specialized care and transportation to the Veterans Administration Hospital in Charleston, defendants assert these allegations do not constitute a constitutional violation. Defendants argue plaintiff received medical care for each of the injuries he complained of and, as plaintiff admitted in his complaint, Director Foot offered to allow him to seek outside medical care for a second opinion at his own expense which is the policy at BCDC. Defendants argue that plaintiff was treated by the BCDC's nurses and physicians and diagnosed appropriately.

Defendants further assert that neither Director Foot nor any of the defendants imposed a condition of confinement on plaintiff which amounted to punishment. As to plaintiff's allegations that Director Foot denied him copies, plaintiff alleges in his complaint that Director Foot gave him 20 free legal copies and then charged him 25 cents for each additional copy which is the regulation outlined the BCDC's Inmate handbook. (See Foot Affidavit and BCDC's Inmate Handbook, p. 36). Defendants argue that since plaintiff has failed to show that the actions or inactions of Director Foot to be a deprivation of his liberty or right to due process, the motion for summary judgment should be granted.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).  The Court stated:

> An inmate must rely on prison authorities to treat his medical
> needs; if the authorities fail to do so, those needs will not be
> met. . . .  We therefore conclude that deliberate indifference

> to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was

aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment. Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts

9

prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff were able to show that defendants' actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988).  Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994).  Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986).  Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

In the present case, the plaintiff's allegations are brought against defendant SHP for medical indifference and defendants for not responding to his request for outside medical attention and that he was required to pay for outside second opinions if he was to be seen by an outside doctor. Plaintiff asserts that he was indigent and could not pay for outside medical opinions and was not allowed to go to the VA. Although plaintiff did not agree with the type of treatment he received, the fact is

plaintiff was provided treatment and medication was prescribed at the BCDC. As previously stated, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. Negligence, in general, is not actionable under 42 U.S.C. § 1983. If this claim could be construed as asserting medical malpractice, it must also fail. Medical malpractice is not actionable under 42 U.S.C. § 1983. *See* Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). In addition, plaintiff has failed to identify any medical expert or provide expert testimony regarding the standard of care, defendants' failure to conform to the standard, or the issue of proximate cause.

Based on the evidence, there has been no deliberate indifference shown to the overall medical needs of the plaintiff. A review of plaintiff's medical records submitted by defendant SHP reveal plaintiff received examinations, medical tests, and medication. Further, he was offered the opportunity to seek outside medical treatment at his own cost per policy. (P. 34 of BCDC inmate handbook). The plaintiff has not provided any medical evidence or filed any affidavits that indicate any lack of treatment caused him to suffer any life threatening medical problems. Based on the above, plaintiff's claims of medical indifference, if any, must fail as a matter of law. Thus, the undersigned recommends that the motions for summary judgment filed by defendant SHP and the remaining defendants be granted as it relates to the plaintiff's claims of medical indifference.

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra.

Plaintiff, like any detainee, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra.  As previously discussed, the Supreme Court noted that the administration of detention facilities is a complex task, with numerous administrative goals, including, among other things, the maintenance of order and discipline within the facility and the prevention of escapes. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

### E.  LEGAL COPIES/ACCESS TO COURTS

As previously stated, plaintiff has made allegations that he has been refused legal copies by defendant Foot but alleges in his complaint that Director Foot gave him 20 free legal copies and then charged him 25 cents for each additional copy. Defendants argue this is pursuant to regulation outlined the BCDC's Inmate handbook. (See Foot Affidavit and BCDC's Inmate Handbook, p. 36). Defendants argue that since plaintiff has failed to show that the actions or inactions of Director Foot to be a deprivation of his liberty or right to due process, the motion for summary judgment should be granted.

The critical issue that must be analyzed to resolve the claims in this case is whether or not the plaintiff has been denied meaningful access to courts and is able to show actual injury as a result of the denial alleged.  Prisoners do not have a cause of action under § 1983 for negligent interference by prison officials with their right of access to the courts.  (Pink v. Lester, 52 F.3d 73 (4th Cir. 1995),

"negligent denial of access to the courts is not actionable under § 1983." ) A prisoner must allege adverse consequence as a basis for allegations that the delay or non delivery deprived him of meaningful access to the courts.  White v. White, 886 F.2d 721 (4th Cir. 1989) and Morgan v. Montanye, 516 F.2d 1367 (2d Cir. 1975 ) cert. denied, 424 U.S. 973 (1976).   Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim.  Lewis v. Casey, 518 U.S.343 (1996). Plaintiff has failed to meet this burden and it is recommended that summary judgment be granted for defendants based on this issue.

### F.  DEFENDANTS' MOTION TO STRIKE

Defendants argue that Sheriff P.J. Tanner and Sergeant R. Edwards, Jr., must be dismissed because the plaintiff fails to state a cause of action against them. Specifically, defendants argue that plaintiff names these two defendants in his complaint but fails to state a claim that they denied him medical care or legal copies. Defendants assert that the only allegations against Tanner and Edwards regard the extradition of the plaintiff from North Carolina to South Carolina for which they filed a motion to strike these claims as they are pending in another lawsuit filed by the plaintiff.

Defendants filed a motion to strike the allegations in paragraph V, pages 4(a) through 4(d) of the complaint regarding the circumstances leading up to plaintiff's detention.  Defendants assert that in paragraph V, pages 4(a)-4(d) of the complaint, plaintiff alleges that he is being illegally detained by the State of South Carolina based on the extradition from North Carolina to South Carolina on a warrant that lacked probable cause. Defendants assert that this claim is substantially the same as the claims raised in a suit filed by plaintiff that is still pending, Parker v. Beaufort

County Sheriff's Office, et al., 4:07-37-MBS-TER, Amended Complaint, filed February 15, 2007. Defendants assert that these claims are redundant, immaterial, impertinent or scandalous.

It appears the same allegations are raised in case 4:07-37-MBS-TER, Parker v. Beaufort County Sheriff's Office, et al.. Therefore, it is recommended that the allegations in Paragraph V, pages 4(a)-4(d) of the complaint be struck and dismissed.

In the alternative, it is recommended that defendants' motion for summary judgment be granted as to defendants Tanner and Edwards in that the sheriff and his deputies are state officials acting in his/their official capacity.

In Gullege v. Smart, 691 F. Supp. 947 (D.S.C. 1988), the court undertook an analysis of the status of South Carolina sheriffs. Based on the following facts, the court concluded that South Carolina Sheriffs were state officials: (1) the state constitution established the office of sheriff and provided that the General Assembly determines a sheriff's powers and duties; (2) state law sets out the sheriff's duties and compensation; (3) the sheriff's arrest powers relate primarily to state offenses; and (4) the Governor is empowered to fill vacancies or remove the sheriff for misconduct. See id. at 954. The court also found that deputy sheriffs are more closely connected to the state than the county. See id. at 955. Deputy sheriffs are agents of the sheriff and "are not employees of the county and [are] not covered by county personnel policy and procedure." Cone v. Nettles, 417 S.E.2d 523, 525 (S.C.1992).

The case of Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996) held that South Carolina Sheriffs are State agents and are not amenable to suit in federal court by virtue of the Eleventh Amendment. Therefore, based on the above, it is recommended that Sheriff Tanner and Sergeant Edwards, Jr., are state officials and are not liable for monetary damages in their official capacities.

## G.  QUALIFIED IMMUNITY

Defendants Foot, Allen, and Kubic contend that to the extent plaintiff seeks to proceed against them in their individual capacities, the defendants are entitled to qualified immunity pursuant to <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982). Defendants argue that the acts complained of by plaintiff are discretionary acts which are protected by the doctrine of qualified immunity as each defendant was acting in his/her capacity as an official of the State of South Carolina at all times relevant to this suit.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity.  Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment.  For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

<u>Akers v. Caperton</u>, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

15

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity in their individual capacity. Thus, the undersigned recommends that the defendants' motion for summary judgment be granted on this issue.

## H.  STATE LAW CLAIMS

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well. Specifically, this Court can decline to continue the action as to the pendent claims if "the district

16

court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### III.  CONCLUSION

The plaintiff has failed to show that the defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by defendant SHP (document #27) for summary judgment and the motion for summary judgment filed by defendants Foot, Kubic, Allen, Edwards, and Tanner (document # 38) be GRANTED IN THEIR ENTIRETY.

It is further RECOMMENDED that all outstanding motions be deemed MOOT.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 15, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**